IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-00323-BO

| | |
|---|---|
| JEREMY SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TRANS UNION, LLC | ) |
| | ) |
| Defendant. | ) |

**NOW COMES** Plaintiff JEREMY SMITH ("Plaintiff"), by and through undersigned counsel of record, amending his Complaint as a matter of course pursuant to Rule 15 of the Federal Rules of Civil Procedure, and complaining of TRANS UNION, LLC ("Transunion" or "Defendant"), and hereby alleges and asserts as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. This action is commenced by Plaintiff seeking actual and compensatory damages, punitive damages, and reasonable attorneys' fees and expenses in redress of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

### JURISDICTION AND VENUE

2. This Court has jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4(1), as it is a foreign corporation engaged in substantial activity within the State of North Carolina, and this action arises from conduct and events which took place, and occurred within Wayne County, North Carolina.

3. Subject-matter jurisdiction is conferred upon, and vested in, this Court pursuant to, 28 U.S.C. § 1331.

4. Venue is proper in this Court.

## IDENTIFICATION OF PARTIES

5. Plaintiff is a natural person and a citizen and resident of Wayne County, North Carolina.

6. Defendant Transunion, upon information and belief, is a limited liability company organized and existing under the laws of the State of Delaware which engages in the collection and compilation of consumer credit information or other information related to consumers, which it publishes and furnishes to third parties for use in interstate commerce. Transunion has applied for and obtained a certificate of authority to transact business within the State of North Carolina from the North Carolina Secretary of State, pursuant to N.C. Gen. Stat. § 57D-7-01(a). At all times relevant to this Complaint, Transunion was acting as a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

7. At all times relevant, Jeremy Smith was the owner of JSmith Civil, LLC, a construction company.

8. On or around April 7, 2020, JSmith Civil, LLC purchased a 2020 Chevrolet Silverado from Deacon Jones.

9. On or around April 15, 2020, JSmith Civil, LLC purchased a Ford Super Duty F-250 from Deacon Jones.

10. On or around June 19, 2020, JSmith Civil, LLC purchased a Ram3500 from Deacon Jones.

11. The three (3) purchases for business purposes were initially seller financed by Deacon Jones ("Loans").

12. Upon information and belief, the Loans were shortly thereafter assigned from

Deacon Jones to Ally Bank.

13. Accordingly, Ally became the creditor on the Loans.

14. Ally immediately began reporting the Loans on Plaintiff's credit and continued to do so through at least January of 2025.

15. At no point in time did Plaintiff ever execute any Guaranty related to the loans for the 2020 Chevrolet Silverado or Ram3500.

16. However, upon information and belief, Plaintiff may have executed a Guaranty related to the Ford Super Duty F-250 loan.

17. Defendant Ally purports to have Guarantees executed by Plaintiff for the 2020 Chevrolet Silverado or Ram3500 loans but neither of those Guarantees is legitimate and were forged by Deacon Jones.

18. More importantly, and regardless of whether Plaintiff executed Guarantees (**which is immaterial for this FCRA claim**), at no point in time did Plaintiff ever function as a co-obligor or co-borrower on the Loans.

19. The distinction is important as credit entries related to a loan are not reflected on a guarantor's credit score until a judgment is obtained against the guarantor.

20. Both Equifax and Experian's websites contain articles discussing the well-known distinction between a co-borrower and a guarantor.

21. Equifax: https://www.equifax.com/personal/education/loans/articles/-/learn/cosigner-vs-guarantor/

22. Experian: https://www.experian.co.uk/consumer/guides/being-a-guarantor.html.

23. Transunion's website also explains the nature of a co-signer or co-borrower best. "Essentially, when you co-sign on a loan, you are taking on legal responsibility for the account,

and it will appear as your obligation on your credit report. Should the other person miss payments or default on the loan, your credit reports will show the delinquencies and the creditor may require you to pay."

24. CRA's are well familiar with the difference between co-borrowers and guarantors, and there are specific sections of a credit report where the "Responsibility" of the borrower is noted (ex: Borrower, Co-Signer, Co-Maker).

25. JSmith Civil, LLC filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") on or about September 19, 2023 (the "Petition Date"), in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court"), BK Case No. 23-02734-5-JNC (hereinafter the "Bankruptcy Case").

26. On or about October 25, 2023, and in the Bankruptcy Case, Ally filed proofs of claim, Claim Numbers # 16-18, (the "Ally Proofs of Claim"), in which it attached two forged Guarantees of Plaintiff for Claim Numbers 16 and 18.

27. Upon discovering the forged documents, counsel for JSmith Civil, LLC contacted Ally's counsel and informed them of the forgery.

28. Plaintiff also filed a complaint with the NC DMV License & Theft Bureau.

29. After further investigation, it was determined that Ally was making false reports to the CRA's in contending that Plaintiff was a "co-signer" on the Loans, a false statement, and that Plaintiff had direct liability on the Loans, another false statement.

30. Ally had no ability to report the status of the loans on the 2020 Chevrolet Silverado or Ram3500 loans on Plaintiff's credit as he was not an obligor on the Loans.

31. Even if the Guarantees were not forged, Ally had no ability to report the status of

the Loans on Plaintiff's credit as he was not a "co-signer" on the Loans.

32. Despite being informed of the forgeries, Ally took no actions to investigate the forgeries or cease the improper reporting of the Loans on Plaintiff's Credit Reports.

33. Instead, Ally continued to report to one or more consumer reporting agencies, as that term is defined by 15 U.S.C. § 1681a(f), that Plaintiff was liable on the Loans.

34. For Transunion entries, the Plaintiff was noted as "Co-Signor on Account," a false statement.

35. Upon information and belief, beginning in March (and May for one loan) of 2023, Ally reported to Transunion that the Loans were 30 days past due.

36. In July of 2023, Ally reported to Transunion that two of the Loans were charged off, and in September of 2023 indicated that one of the Loans was charged off.

37. However, the Loans were never charged off.

38. On September 19, 2023, JSmith Civil, LLC filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of North Carolina.

39. Despite that filing, Ally continued to report on Plaintiff's credit regarding the Loans.

40. The eventual confirmed bankruptcy plan of JSmith modified the terms of the Loans, and JSmith has been timely on its plan payments to Ally.

41. As it pertains to the Ally Loans, as of September 2024, the following inaccurate entries were on Plaintiff's credit report, and continue to be on his credit report despite the Transunion Dispute made by Plaintiff: (i) all credit entries made on Plaintiff's credit report since he was (at worst) a guarantor on the Loans and not a co-borrower, (ii) the credit entries marking

the Loans as charged off, (iii) the credit entries after the order confirming JSmith's bankruptcy plan showing the Loans as past due, charged off, and not containing the bankruptcy plan court ordered terms, (iv) all entries that showed a past due amount.

42. According to Transunion, the Loans will remain on Plaintiff's credit report until January or February of 2030.

## PLAINTIFF'S DISPUTE OF CREDIT ENTRIES

43. On or around February 10, 2025, Plaintiff formally disputed the accuracy of the information being supplied by Transunion on Plaintiff's consumer reports concerning the Loans: namely that Plaintiff was not liable on the Loan as a co-signor (the "2025 Transunion Dispute").

44. In response to the 2025 Transunion Dispute (the "Transunion Dispute Response"), on March 12, 2025, while changing some minor information, Transunion inexplicably refused to correctly update Plaintiff's consumer report to display accurate information concerning the Loans, namely that Plaintiff was not liable on the Loans, that the Loans were current, that the Loans were not charged off, and the terms of the Loans.

45. Transunion also had knowledge of Plaintiff's credit dispute through a previously dismissed FCRA lawsuit by Plaintiff against Transunion and others, and knew that Plaintiff was (at worst case) a guarantor on the Loans..

46. Transunion did not conduct a reasonable investigation into Plaintiff's dispute, and instead informed Plaintiff that the substantive information concerning the Loans was accurate, that Plaintiff was a Co-Signor, that the balance owed was $19,148, that the Loans were in substantial arrears, that the Loans were charged off, that there weren't payment terms for the Loans, and that the Loans were past due. All of these findings by Transunion were clearly incorrect.

47. Had Transunion done a reasonable investigation they would have (i) requested and

reviewed the alleged "co-borrower" documents that were signed and determined that Plaintiff was not a co-borrower, (ii) requested and reviewed documents showing the bankruptcy status of JSmith and the confirmed plan.

48. Immediately after the credit dispute was concluded by Transunion, Plaintiff's credit score at Transunion inexplicably dropped 50 points.

49. During this same period, Plaintiff suffered actual damages as a direct and proximate result of the willful, reckless, and/or negligent failure of Transunion to provide complete, accurate, and truthful information to users of Plaintiff's consumer report with respect to the Loans.

50. Plaintiff, along with his businesses, have been unable to obtain financing because of the negative entries on his personal credit which reduced his credit score by at least 100 points.

51. Currently, the Loans at issue constitute the primary negative entries on Plaintiff's credit, significantly outweighing any other minor negative items, and are by far the predominant factor adversely affecting Plaintiff's creditworthiness and credit score.

52. Accordingly, had Transunion provided consumer reports which included only truthful and accurate information concerning Plaintiff and his creditworthiness, Plaintiff along with his businesses would have been approved for loans.

### FIRST CLAIM FOR RELIEF
### Violations of the Fair Credit Reporting Act
### [15 U.S.C. § 1681 *et seq.*]

53. Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully set forth herein.

54. Transunion is a consumer reporting agency as that term is defined in 15 U.S.C. § 1681a(f).

55. Pursuant to 15 U.S.C. § 1681s-2(b)(1)(E), furnishers of information, after receiving

notice of a dispute from a CRA and conducting an investigation and/or reinvestigation, are required, for any inaccurate, incomplete, or unverifiable information, to promptly:

    (i)       modify that item of information;
    (ii)      delete that item of information; or
    (iii)     permanently block the reporting of that item of information.

15 U.S.C. § 1681-s2(b)(1)(E)(i) through (iii).

56. Plaintiff notified Transunion of the inaccuracy and falsity of the information on Transunion's consumer report concerning the Loans.

57. At no time did Transunion notify Plaintiff that they considered Plaintiff's dispute frivolous or irrelevant.

58. Transunion failed to conduct a reasonable investigation into Plaintiff's disputes with Transunion concerning the Loans.

59. Additionally, Transunion has failed to implement corrections made or suggested by Ally, or, alternatively, have failed to conduct an adequate reinvestigation, in violation of 15 U.S.C.§ 1681i.

60. Plaintiff suffered actual damages from Transunion's violations of the FCRA, including, but not limited to impairment to his creditworthiness, denial of requests for extensions of credit, emotional distress and suffering as a direct and proximate result, and other pecuniary losses, expenses, costs and damages, including but not limited to, the attorneys' fees and expenses incurred in connection with the prosecution of this matter.

61. Transunion's violations of the FCRA outlined herein constitute willful noncompliance, entitling Plaintiff to statutory damages of not less than ONE HUNDRED DOLLARS AND 0/100 ($100.00) and not more than ONE THOUSAND DOLLARS AND 0/100 ($1,000.00) per violation of the FCRA, together with punitive damages, costs, and reasonable

attorneys' fees, pursuant to 15 U.S.C. § 1681n.

62. Alternatively, Transunion's violations of the FCRA outlined herein constituted negligent noncompliance, entitling Plaintiff to actual damages, costs, and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1681o.

63. As a direct and proximate result of the conduct of Transunion, as alleged herein, Plaintiff is entitled to recover from Transunion actual damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS AND 0/100 ($75,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, and based upon the foregoing, Plaintiff respectfully prays for entry of an Order awarding him the following relief:

1. Awarding Plaintiff statutory damages of not less than ONE HUNDRED DOLLARS AND 0/100 ($100.00) and not more than ONE THOUSAND DOLLARS AND 0/100 ($1,000.00) per violation of the FCRA, against Transunion, or alternatively, actual damages pursuant to 15 U.S.C. § 1681o.

2. Plaintiff have and recover from Transunion the costs of this action, including Plaintiff's reasonable attorneys' fees incurred in the prosecution of this matter, as prescribed by 15 U.S.C. §§ 1681n and/or 1681o;

3. Plaintiff have and recover from Transunion, on account of the willful and wanton nature of its actions alleged herein, punitive damages in an amount to be determined at the trial of this matter;

4. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under applicable law;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as this Court deems just and proper.

This the 2nd day of July, 2025.

**BUCKMILLER & FROST PLLC**
*Attorney for Plaintiff*

_____.
**MATTHEW W. BUCKMILLER**
N.C. State Bar No.: 35194
4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
Local: (919) 296-5040
Fax: (919) 977-7101
Email: mbuckmiller@bbflawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have this day filed a copy of the forgoing **AMENDED COMPLAINT** with the Clerk of Court for the United States District Court for the Eastern District of North Carolina, and served the following parties via CM/ECF transmission as indicated:

Marc F. Kirkland
Quilling, Selander, Lownds
 Winslett & Moser, P.C.
6900 Dallas Parkway, Ste. 800
Plano TX 75024
*Counsel for Defendant*

Executed, under penalty of perjury, this the 2nd day of July, 2025.

BY: s/Matthew W. Buckmiller
MATTHEW W. BUCKMILLER, NCSB No. 35194
mbuckmiller@bbflawfirm.com
4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
*Attorneys for Plaintiff*